UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY C. JOHNSON,<br><br>    Petitioner,<br><br>    v.<br><br>SCOTT KERNAN,<br><br>    Respondent. | No. 2:17-cv-02525 DAD AC<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a former California state prisoner[1] proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the petition (ECF No. 1) as supplemented (ECF No. 38). See ECF No. 45. Petitioner challenges his 2013 conviction for rape of an incompetent person. Respondent has answered, ECF No. 48, and petitioner has filed a traverse, ECF No. 51.

## BACKGROUND

### I. Proceedings in the Trial Court

#### A. Preliminary Proceedings

Petitioner was charged with rape of a person incapable of consent, Cal. Penal Code §

---

[1] Petitioner filed a notice of change of address in 2019, ECF No. 52, which suggested that he had been released from custody. The collateral consequences of his convictions prevent the case from being moot. See Chacon v. Wood, 36 F.3d 1459, 1463 (9th Cir. 1994).

1

261(a)(1), in Solano County.  The alleged victim, Lanisha H., was developmentally disabled and 18 years old at the time of the sexual contact at issue.  Her mother was granted conservatorship of Lanisha after she was discovered to be pregnant by petitioner.

The defense brought a pretrial motion to exclude any reference to the conservatorship at trial, arguing that it was irrelevant to the rape charge.  CT 31-32.[2]  Counsel cited the text of the statute under which petitioner was charged, which explicitly states: "Notwithstanding the existence of a conservatorship pursuant to the provisions of the Lanterman-Petris-Short Act (Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code), the prosecuting attorney shall prove, as an element of the crime, that a mental disorder or developmental or physical disability rendered the alleged victim incapable of giving consent."  CT 31-32 (quoting Cal. Penal Code § 261(a)(1)).  At the hearing on the motion in limine, the prosecutor agreed that the question of whether Lanisha had a developmental disability that prevented her from consenting to intercourse was a question of fact for the jury and that the conservatorship was irrelevant to that question.  1 RT 14-16.[3]  The court granted the motion. 1 RT 15-16.

B. The Evidence Presented at Trial

The California Court of Appeal summarized the evidence as follows.

**I. The Victim's Disabilities**

> The victim, born in July 1992, suffers from significant mental disabilities. When she was three or four months old her mother noticed she "wasn't doing normal things, like crawling . . . or trying to sit up or anything." She did not progress like her older sisters as she grew older. She could not walk at age two and did not start to talk until she was about three. She attended special education programs from preschool through high school. The victim also has vision and hearing problems, weak wrists and a left foot that turns out when she walks.
>
> Her mother testified that at age 18 the victim "can't do the same things that a normal 18-year-old could do. . . . She can't drive.  She can't cook. She's not responsible." At the time of trial, when the victim was 20, she still lived with her mother. She could read numbers from one to ten but was unable to count change, do

---

[2] The Clerk's Transcript on Appeal ("CT") is at ECF No. 49-1, pp. 3-120.
[3] The Reporter's Transcript on Appeal ("RT") is at ECF No. 49-2.

subtraction, tie her shoes, read, tell time, or understand measurements. She could not write a complete sentence and had difficulty adding three plus one. The victim testified that her older sister was 80 years old and that 80 is younger than 20. When given something to read, instead of reading the words, she spelled out the letters.

Her Mother did not explain the relationship between menstruation and pregnancy to the victim when she first started menstruating because she did not think the victim would understand. Neither her mother nor her older sister ever discussed "'the birds and the bees'" with the victim or heard her express interest in boys or sex. Her older sister testified that she never discussed boys, sex or kissing with the victim because she did not think her sister would understand.

**II. The Crime**

After the victim graduated from her high school's special education program she attended a transitional program in which she helped out as a teacher's aide in a class for developmentally disabled young children. Johnson taught the class and was the victim's supervisor.[4] Around Christmas of 2010, her older sister and mother noticed calls from Johnson on the victim's cell phone. In January, the victim told her nephew she had a boyfriend.

That spring, her mother noticed that the victim's body was changing. In early June an obstetric examination confirmed she was approximately four months pregnant. Her mother contacted police and over the next days made two pretext calls to Johnson, both of which were recorded and played for the jury. During both calls Johnson avoided expressly admitting he had sex with the victim, but he repeatedly assured her mother that he would take responsibility for the child and would contribute financially if a test showed him to be the father. The victim gave birth by C-section around December 2011. DNA testing revealed a very high statistical probability that Johnson is the father.

The defense was that the victim's pregnancy resulted from a consensual sexual relationship and that the prosecution failed to prove she lacked the capacity to consent.

ECF No. 49-3 at 157-159.[5]

////

---

[4] Because petitioner alleges in Claim Three that he was not technically Lanisha's supervisor, the undersigned does not adopt the Court of Appeal's unexplained characterization of the workplace relationship. It was undisputed at trial, however, that petitioner was a teacher with general responsibility for the preschool classroom in which Lanisha worked. To that extent petitioner informally supervised her conduct in the classroom.

[5] The state court record is lodged at ECF No. 49 and its attachments. For ease of reference, the court will cite directly to documents as electronically docketed. All referenced page numbers are those imposed by the electronic filing system.

C. Outcome

The jury found petitioner guilty of rape of an incompetent person, with an enhancement for the infliction of great bodily injury. The court sentenced petitioner to nine years in prison.

II.     Post-Conviction Proceedings

On December 31, 2015, the California Court of Appeal modified restitution and parole revocation fines imposed by the sentencing court, but otherwise affirmed the judgment. ECF No. 49-3 at 157-169 (opinion of the California Court of Appeal). On March 16, 2016, the California Supreme Court summarily denied review. ECF No. 49-3 at 231 (order denying review). On October 3, 2016, the United States Supreme Court denied a petition for writ of certiorari. ECF No. 233 (U.S. Supreme Court docket sheet).

On October 3, 2017, petitioner filed the instant federal petition. ECF No. 1. On July 18, 2018, petitioner filed an exhaustion petition in the California Supreme Court. ECF No. 49-3 at 235 et seq. On December 12, 2018, the California Supreme Court denied the petition without opinion. ECF No. 49-3 at 304. Petitioner thereafter supplemented his federal petition. ECF No. 38; see also ECF Nos. 41, 45. Respondent answered, ECF No. 48, and petitioner filed a traverse, ECF No. 51.

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99

1  (2011). State court rejection of a federal claim will be presumed to have been on the merits
2  absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed,
3  489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a
4  decision appearing to rest on federal grounds was decided on another basis)). "The presumption
5  may be overcome when there is reason to think some other explanation for the state court's
6  decision is more likely." Id. at 99-100.

7  The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal
8  principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538
9  U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established
10  Federal law," but courts may look to circuit law "to ascertain whether…the particular point in
11  issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64
12  (2013).

13  A state court decision is "contrary to" clearly established federal law if the decision
14  "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529
15  U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state
16  court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to
17  the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court
18  was incorrect in the view of the federal habeas court; the state court decision must be objectively
19  unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

20  Review under § 2254(d) is limited to the record that was before the state court. Cullen v.
21  Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court
22  reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other
23  words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182.
24  Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is
25  confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d
26  724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims
27  summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a
28  state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 562 U.S. at 102.

## DISCUSSION

I. Claim One: Ex Post Facto Claim

  A. Petitioner's Allegations and Pertinent State Court Record

Petitioner claims that his rights under the Ex Post Facto Clause were violated because the victim, Lanisha, was not placed in conservatorship by her mother until after she became pregnant. ECF No. 1 at 6. He contends that prior to her conservatorship, Lanisha retained "liberties" that included the authority to consent to sexual activity. Id. Petitioner appears to argue that because the adjudication of incompetence in conservatorship proceedings post-dated the sexual acts on which the charges were based, he cannot have been found criminally liable based on Lanisha's incompetence. Id.; see also ECF No. 51 at 7-8. Specifically, he argues that he cannot have been found to *know* that Lanisha was incapable of consent prior to her adjudication of incompetence. ECF No. 1 at 6, 15-20; ECF No. 51 at 7-8.

  B. The Clearly Established Federal Law

The United States Constitution prohibits the federal government and the states from passing any "ex post facto Law." U.S. Const., Art. I, § 9, cl. 3 (federal government); Art. I, § 10, cl. 1 (states). These clauses prohibit the government from retroactively altering the definition of a crime or increasing the punishment for criminal acts. California Department of Corrections v. Morales, 514 U.S. 499, 504-05 (1995).

  C. The State Court's Ruling

The California Supreme Court summarily denied this claim. Accordingly, this court must ask whether there is any reasonable basis for the state court's decision in light of the clearly established federal law. Richter, 562 U.S. at 102.

  D. Objective Reasonableness Under § 2254(d)

Petitioner does not and cannot allege that the statute under which he was convicted was enacted or expanded after the date the charged offenses took place. That is not the case.

////

Accordingly, the ex post facto clause has no bearing on the validity of petitioner's conviction.[6] Because the claim is legally unsupportable, it's denial cannot have been unreasonable.

####    II.    Claim Two: Limitations on Cross-Examination

#####          A. Petitioner's Allegations and Pertinent State Court Record

Petitioner claims that his due process and confrontation rights were violated when defense counsel was "forbidden" from cross-examining Ms. Nesbit (Lanisha's mother) and Officer Garcia about their preliminary hearing testimony. Doc. 1 at 6; Doc. 38 at 3, 16. He alleges that he was prevented from impeaching Nesbit's trial testimony that Lanisha "did not or would not know certain things" with Nesbit's prior testimony that she did not know whether or not the victim "was sexual[ly] active prior to the petitioner." ECF No. 38 at 16. Such impeachment would have given the jury a basis to conclude that Lanisha was "more capable and able to consent." ECF No. 1 at 16. Petitioner alleges further that he was prevented from impeaching Officer Garcia's testimony that he had only ever worked on one case involving petitioner with evidence of a previously-dismissed court case involving the same charges. Id. at 23.

By way of background, the charges in this case were originally filed in Solano County case number case number VCR211414. See CT 2. That case was dismissed without prejudice and the charges were later re-filed in case number VCR213845, which led to the conviction challenged here. See CT 1-2. It appears that a preliminary hearing had been conducted in case number VCR211414. See 1 RT 217 (defense counsel asking whether MS. NESBIT recalled testifying at a preliminary hearing "in this matter" in 2011); CT 14 (petitioner waiving preliminary hearing in matter VCR213845).

Neither the prosecution nor the defense brought any in limine motions concerning Nesbit's or Officer Garcia's preliminary hearing testimony in the first case. See CT 27-29, 31-35. During cross-examination, defense counsel did not seek to impeach either witness's testimony

---

[6] Moreover, to the extent petitioner argues that the conservatorship made him criminally liable for acts that had not previously been chargeable, he is mistaken. Cal. Penal Code § 261(a)(1) makes conservatorship irrelevant to the question whether a person is capable of consenting to intercourse within the meaning of the rape statute. That is why the fact of the conservatorship was excluded from the trial. See 1 RT 15-16.

7

1   with any prior testimony.  See 1 RT 158-222, 280; 2 RT 367-372.  Defense counsel sought only
2   to ask Officer Garcia about the existence of the previously-dismissed court case, in order to
3   impeach his testimony that he had only been involved in one case against petitioner.  2 RT 369,
4   373-374.  Defense counsel argued that Officer Garcia's inability to recall the previously-
5   dismissed case would call his memory in question, and in turn cause the jury to question his recall
6   of when petitioner consented to DNA testing.  2 RT 374.  The trial court agreed with the
7   prosecutor that the question was marginally relevant, because a police officer did not necessarily
8   view a case against a defendant in terms of court filings by the prosecution.  2 RT 374.  The trial
9   court denied the request pursuant to California Evidence Code section 352, finding that any
10  probative value of the question was slight, and outweighed by the potential prejudice arising from
11  the jury speculating about why the previous case was dismissed.  2 RT 374-375.

### B. The Clearly Established Federal Law

Whether rooted in the due process clause of the Fourteenth Amendment or the confrontation clause of the Sixth Amendment, the Constitution guarantees "a meaningful opportunity to present a complete defense."  Crane v. Kentucky, 476 U.S. 683, 690 (1986).  However, a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  Taylor v. Illinois, 484 U.S. 400, 410 (1988).  The exclusion of even relevant evidence does not violate due process, unless the state court's ruling offends a "fundamental principle of justice."  Montana v. Egelhoff, 518 U.S. 37, 42-43 (1996).  "A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions" as set forth in the state's evidentiary rules.  United States v. Scheffer, 523 U.S. 303, 308 (1998).

Similarly, the Constitution guarantees the right to cross-examine prosecution witnesses, Delaware v. Fensterer, 474 U.S. 15, 20 (1985), but does not prohibit limitations that accommodate other legitimate interests in the criminal trial process, Rock v. Arkansas, 483 U.S. 44, 55 (1987). Accordingly, "trial judges retain wide latitude… to impose reasonable limits on such cross-examinations based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally

relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). The right to cross-examine includes the right to impeach witness credibility, which may also be limited by such concerns. Davis v. Alaska, 415 U.S. 308, 316 (1974).

### C. The State Court's Ruling

The California Supreme Court summarily denied this claim. Accordingly, this court must ask whether there is any reasonable basis for the state court's decision in light of the clearly established federal law. Richter, 562 U.S. at 102.

### D. Objective Reasonableness Under § 2254(d)

Summary denial was not objectively unreasonable under clearly established federal law, because the record plainly establishes that the defense was not "forbidden" from cross-examining any witness with prior inconsistent statements as petitioner alleges. To the extent that defense counsel was not allowed to question Officer Garcia about the previous case, in an attempt to demonstrate his faulty memory, the trial court's ruling pursuant to California Evidence Code section 352 was constitutionally permissible. See Van Arsdall, 475 U.S. at 679 (Constitution does not prohibit limits on cross-examination as to marginally relevant matters). Any contention to the contrary is frivolous.

### III. Claim Three: Sufficiency of the Evidence

#### A. Petitioner's Allegations and Pertinent State Court Record

Petitioner contends that his conviction is constitutionally defective because the evidence does not support the conclusion that he "knew or should have known" that Lanisha was incapable of consenting to intercourse due to a developmental disability. He appears both to dispute the adequacy of proof at trial, and to proffer extra-record evidence that he was not Lanisha's teacher or supervisor but merely a coworker. He alleges that he was an "uncertified teacher, under a conditioned [and] temporary certificate to teach preschoolers not adults." ECF No. 1 at 6. He contends that he cannot have committed a crime of violence against Lanisha because there was testimony that he was "genuine" with her and with the baby, and that his observations of her functioning in the classroom supported a belief that she was capable of consenting to sexual intimacy. Id. at 7, 10.

B. <u>The Clearly Established Federal Law</u>

Due process requires that each essential element of a criminal offense be proven beyond a reasonable doubt. <u>United States v. Winship</u>, 397 U.S. 358, 364 (1970). In reviewing the sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307 (1974). If the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer to that resolution." <u>Id.</u> at 326. "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." <u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011).

The sufficiency of evidence supporting a conviction is evaluated on the basis of the trial record; <u>Jackson</u> review does not permit consideration of extra-record evidence. No United States Supreme Court precedent holds that the presentation of extra-record evidence inconsistent with that conviction, without more, establishes a violation of federal constitutional rights or supports federal habeas relief. Even affirmative proof of actual innocence does not provide a basis for federal habeas relief, because there is no "clearly established federal law" that recognizes a substantive constitutional right not to be criminally convicted if innocent. See <u>Herrera v. Collins</u>, 506 U.S. 390, 404 (1993); <u>Dist. Attorney's Office v. Osborne</u>, 557 U.S. 52, 71-72 (2009) (recognizing that the Supreme Court has not decided the issue).

In procedural contexts where "actual innocence" may be relevant to federal habeas proceedings, the standard is high: a petitioner must present reliable new evidence, in light of which no reasonable jury would have convicted him. See <u>Schlup v. Delo</u>, 513 U.S. 298 (1995) (actual innocence as exception to procedural default), <u>McQuiggin v. Perkins</u>, 569 U.S. 383 (2013) (actual innocence as basis for equitable tolling of statute of limitations). Meeting this standard does not entitle a petitioner to habeas relief; it only excuses a procedural defect that would otherwise bar federal consideration of some other, independently cognizable claim of a constitutional violation.

      C.  <u>The State Court's Ruling</u>

This claim was presented to the California Supreme Court in petitioner's 2018 exhaustion petition, which was summarily denied.[7]

      D.  <u>Objective Unreasonableness Under § 2254(d)</u>

Summary denial of this claim cannot have involved the unreasonable application of clearly established federal law, because no U.S. Supreme Court precedent holds that a conviction may be set aside for "insufficient evidence" on a record supplemented by evidence that was not presented at trial. Even if petitioner had presented affirmative evidence establishing that he was subjectively unaware of Lanisha's incapacity, federal habeas relief would be barred for lack of "clearly established federal law" governing his claim. See <u>Wright v. Van Patten</u>, 552 U.S. 120, 125-26 (2008) (per curiam) (if no Supreme Court precedent controls a legal issue raised by a habeas petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law).

To the extent that petitioner challenges the sufficiency of the evidence that was presented at trial, as <u>Jackson</u> permits, the claim fails on the merits under any standard of review. Petitioner's awareness of Lanisha's limited capacity did not depend on the relationship of petitioner's job classification to Lanisha's on an organizational chart, or on the job duties of either of them. The evidence showed, and the prosecutor argued, that petitioner's daily interactions with Lanisha in the classroom were more than enough for him to observe her extremely low level of functioning. The nature and extent of those interactions does not depend on how the working relationship is characterized.

In adjudicating a factually related claim, the California Court of Appeals found that Lanisha's lack of capacity to consent to intercourse was proved by "overwhelming evidence."

---

[7] Petitioner presented a record-based sufficiency of evidence claim on direct appeal. There, he argued that the evidence presented at trial was insufficient to establish that Lanisha was incapable of consent. ECF No. 49-3 at 34 (Appellant's Opening Brief). Here the argument is different: petitioner contends that the evidence is insufficient to prove that *he knew* (or should have known) of her incapacity. Because the instant claim turns on proof of *mens rea*, which was not the issue addressed on direct appeal, the opinion of the Court of Appeal as to the sufficiency of evidence is not the state court decision subject to review under § 2254(d).

ECF No. 49-3 at 92. The undersigned agrees. The Court of Appeal summarized the pertinent evidence as follows:

> The evidence in this case showed that Lanisha was severely developmentally disabled from the time she was born. She did not walk or talk as quickly as other children (1 RT 158), and her entire education consisted of special education programs (1 RT 89-91). Even as an adult, Lanisha could not tell time (1 RT 121), write complete sentences (1 RT 143), tie her own shoes (1 RT 184), or read (1 RT 186-187.) She struggled with even very basic math, such as subtracting one from three. (1 RT 226- 227, 292, 296.) Lanisha mimicked young children when she spent time in their company, and she continued to play with dolls. (1 RT 115, 223.) Before Lanisha turned 18 years old, her mother and sister did not discuss with her the purpose of the menstrual cycle, relationships with men, and sex because they did not think Lanisha would understand those topics. (1 RT 98-99, 111-112; 2 RT 342-344.)
>
> When Lanisha became pregnant with appellant's child, she was unable to effectively communicate with her family or her obstetrician regarding the pregnancy. (1 RT 69-71, 77-80.) When the topic came up, she seemed confused and just "shut down." (1 RT 70, 80, 208-209, 230; 2 RT 351-352.) Once the baby was born, Lanisha's mother and sister oversaw everything regarding its care. (1 RT 139; 2 RT 353.) Lanisha's sister testified that she would not feel comfortable leaving the baby alone with Lanisha for 24 hours. (2 RT 353.)
>
> Based on the evidence discussed above, it is apparent that Lanisha's developmental disability rendered her unable to intellectually grasp even basic concepts, let alone the concept of sex, its biological purpose, and its potential consequences.
>
> Lanisha's testimony and demeanor on the stand further showed that she lacked the capacity to consent. The demeanor of a witness is "highly probative of her mental condition." (*People v. Miranda*, *supra*, 199 Cal.App.4th at p. 1414.) Throughout her testimony, Lanisha often gave one word answers. At the longest, her answers consisted of short phrases. She was unable to describe in any detail her sexual encounter with appellant apart from suggesting that it happened on a mat in a classroom and involved the removal of clothing and touching. She often did not answer questions out of embarrassment, and many of her answers were unintelligible. (1 RT 285-331.)
>
> Lanisha's answers in response to questions about sex, sex organs, and reproduction were often nonsensical and childlike. For example, when the prosecutor asked her whether there is anything different about the way a little boy and a little girl go to the bathroom, Lanisha responded, "Close the door when you go to the bathroom." (1 RT 308.) When the prosecutor asked Lanisha if she had ever heard of the words "penis" or "breasts" and what those words described, Lanisha repeated, "Close the door when you go to the bathroom." (1 RT 309.) Lanisha said, "I don't know that question either," when the prosecutor asked her how babies are made and how she could make

>  another baby. (1 RT 313.) In response to defense counsel's inquiry as to what happens during Lanisha's period, Lanisha stated, "Your stomach start growling." (1 RT 320.) When defense counsel asked Lanisha how the baby came to be in her stomach, she responded, "The people took it." (1 RT 322.) When the prosecutor asked Lanisha whether she knew what would happen after appellant took her pants off, Lanisha answered, "I don't know." (1 RT 330.)

ECF No. 49-3 at 93-94.

The court continued:

> "The jury could reasonably infer that [Lanisha's] inability to articulate what happened [during the sexual encounter] demonstrated that [she] was not capable of appreciating what took place or freely and voluntarily participating in the acts." (*People v. Miranda*, *supra*, 199 Cal.App.4th at p. 1415.) Lanisha's "difficulty in answering questions at trial further support[ed] the inference that she lacked the mental capacity to consent to [appellant's] conduct." (*Ibid*.)
>
> The conclusion that Lanisha lacked the capacity to consent is consistent with the observations of the parties and the court. Defense counsel challenged Lanisha's competency to testify (CT 43-44; 1 RT 152), and the prosecutor acknowledged that "it was kind of a close call as to whether competency was established." (1 RT 269.) During closing argument, the prosecutor stated that if there was ever a person who lacked the capacity to consent, it was Lanisha. (2 RT 447.) He pointed out that her testimony demonstrated that she did not understand the concept of sex or connect it with pregnancy, and that she gave hardly any information about the sexual encounter. (2 RT 449-450.) At sentencing, the trial court stated, "During [Lanisha's] testimony, it was clear to the court, based on her demeanor, her answers, her responses, that she was much like a child . . . ." (2 RT 536-537.) The court further observed that while Lanisha's hormones were that of a 19-year-old, "clearly, mentally, she was not a person who would be 19 years old. She's far below that and seemed quite childlike." (2 RT 537.)
>
> "While these observations are not evidence in the sense that they were presented to the jury as proof of facts in dispute, they serve as an indication of what a juror could reasonably infer regarding [Lanisha's] capacity to consent based upon her demeanor as she testified. If the conclusions of the trial court and counsel were reasonably drawn from the evidence, the jurors could rationally reach the same conclusions based on their observations of very same conduct." (*People v. Miranda*, *supra*, 199 Cal.App.4th at p. 1416.)

ECF No. 49-3 at 94-95.

A reasonable jury could not fail to conclude that petitioner's regular classroom interactions with Lanisha exposed him to her "childlike" level of functioning. Many of the characteristics and behaviors that proved lack of capacity would have been apparent to anyone

13

who spent time with her regularly: the childlike demeanor, use of one-word sentences, inability to tell time, and inability to tie her shoes, for example. Lanisha's mimicking of young children would have been obvious in the context of a preschool classroom, which is where petitioner worked with her. It simply begs credulity that someone exposed to such behavior would believe the person capable of consenting to sex. No amount of evidence that petitioner was not Lanisha's teacher or supervisor could change that.

For all these reasons, it was entirely reasonable for the state court to summarily deny a claim that the *mens rea* element of the offense lacked a sufficient evidentiary basis, or that it could be undermined by additional evidence. Habeas relief is therefore unavailable.

### IV. Claim Four: Ineffective Assistance of Counsel

#### A. Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges that trial counsel was ineffective for failing to conduct a reasonable investigation and to contact experts. ECF No. 1 at 7. Specifically, counsel failed to obtain surveillance camera footage of Lanisha's family permitting petitioner to interact with Lanisha and their baby in the courthouse parking lot after a hearing. This would have been favorable defense evidence, and would have impeached the testimony of family members. Petitioner also alleges that he referred counsel to "experts from UC Davis, and U of Reno and others," but that counsel failed to contact those experts. ECF No. 1 at 7.

#### B. The Clearly Established Federal Law

To establish a Sixth Amendment violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693-94. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

    C. The State Court's Ruling

  The California Supreme Court denied the claim summarily.

    D. Objective Unreasonableness Under § 2254(d)

  It would not have been objectively unreasonable for the state habeas court to deny both aspects of petitioner's Strickland claim for lack of prejudice. See Strickland, 466 U.S. at 697. Defense counsel did question Lanisha's mother about the parking lot interaction. Ms. Nesbit acknowledged that Lanisha had wanted petitioner to see the baby, that Nesbit beckoned petitioner to her car and allowed him to play with the baby for a few minutes, and that she talked with him while he played with the baby. 1 RT 194, 202-206. The security camera footage of the interaction thus had no independent impeachment value, and petitioner cannot show that counsel's failure to obtain the alleged footage prejudiced him. See Clark v. Arnold, 769 F.3d 711, 728 (9th Cir. 2014) (where counsel's deficient performance is based on the failure to present evidence, the reviewing court "compare[s] the evidence that actually was presented to the jury with the evidence that might have been presented had counsel acted differently.") Even if there were videotape that was inconsistent with Nesbit's testimony as to some details of the interaction, that cannot have had any likely effect on the outcome of the proceeding.

  As to counsel's alleged failure to consult experts and/or obtain expert opinion testimony, petitioner provides no declarations from experts as to what evidence they would have provided at trial. Absent a showing of what expert testimony could have been developed, petitioner cannot establish prejudice as a matter of law. See Bible v. Ryan, 571 F.3d 860, 871 (9th Cir. 2009) (where petitioner contended he might have some type of organic brain dysfunction or disorder but offered no expert declaration that he in fact suffered from it, "speculation is not sufficient to establish prejudice."); Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) ("Wildman offered no evidence that an arson expert would have testified on his behalf at trial. He merely speculates that such an expert could be found."); Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) ("speculation about what an expert could have said is not enough to establish prejudice").

////

////

CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 23, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE